# ORIGINAL

RECEIVED

MAR - 3 2010

AT 8:30_____M
WILLIAM T. WALSH, CLERK

HUTNER KLARISH LLP
Attorneys for Plaintiff
1359 Broadway, Suite 2001
New York, New York 10018
(212) 391-9235 / Fax: (212) 981-9122
Eric S. Hutner, Esq. - EH6836

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN BIRD,

                    Plaintiff,

vs.

MOORE STEPHENS, P.C.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. _10-1091 (DMC)_

## COMPLAINT

Jury Trial Demanded

Plaintiff John Bird, by his attorneys, Hutner Klarish LLP, for his Complaint

("Complaint") herein respectfully alleges as follows:

### NATURE OF THE ACTION

1.  This is a case in which the defendant's fraudulent misconduct resulted in damages for

Plaintiff John Bird (hereinafter "Plaintiff"). This action seeks redress for that misconduct.

2.  In 2008, defendant Moore Stephens, P.C. (hereinafter "Defendant" or "MSPC") was

engaged to audit the financial statements of China Sky One Medical, Inc. ("CSKI"), a public-

traded corporation operating and doing business in China. According to its Form 10-K for the

year ending December 31, 2008 (the "10-K"), filed on April 15, 2009 with the U.S. Securities

and Exchange Commission ("SEC"), CSKI, through its subsidiaries, is engaged in the

"development, manufacture, marketing and sale of over-the-counter, branded nutritional

supplements and over-the-counter plant and herb based pharmaceutical and medicinal products"

in China and elsewhere.

3.   In the course of its engagement as CSKI's auditors, MSPC audited CSKI's financial statements for the year ending December 31, 2008 (hereinafter the "CSKI Financial Statements"). Following the completion of its audit, it certified the CSKI Financial Statements and with respect thereto issued an "unqualified" or "clean" opinion, in effect reporting that the CSKI Financial Statements contained in the 10-K were materially accurate. However, the CSKI Financial Statements were inaccurate in several material respects, including the fact that they reported that CSKI or its subsidiaries owned seven patents in China supposedly worth $15,093,718, when in fact it did not own any patents. As a result of this material misstatement, the assets of CSKI were substantially overstated in the 10-K.

4.   It is unclear at this time whether MSPC knew that the CSKI Financial Statements were materially false and misleading at the time it issued its unqualified opinion. However, what is clear is that in August 2009 and again in February 2010, MSPC became aware of the fact that the CSKI Financial Statements were materially false and misleading and that its unqualified opinion with respect to them was baseless. Despite becoming aware of these problems, and despite having a duty to correct the information that it knew to be false which had been disseminated into the market via the 10-K, MSPC failed to issue corrected statements or withdraw its support from the CSKI Financial Statements.

5.   As a result of the material errors in the CSKI Financial Statements, the market value of CSKI has been inflated artificially and remains artificially inflated still because MSPC has failed to acknowledge the errors in the CSKI Financial Statements. As described below, MSPC's failure to disclose that the CSKI Financial Statements are materially inaccurate and that its unqualified opinion with respect thereto is no longer accurate or valid resulted in Plaintiff incurring significant monetary damages.

## PARTIES, JURISDICTION AND VENUE

6.  Plaintiff John Bird is an individual who resides in the State of Texas.

7.  Defendant MSPC is a New Jersey corporation having offices in the State of New Jersey. MSPC is registered with the Public Company Accounting Oversight Board (the "PCAOB") and is therefore bound to observe and follow auditing standards defined by rules adopted by the PCAOB.

8.  This Court has jurisdiction over this dispute pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, and pursuant to 28 U.S.C. § 1331, in that the action arises under the Constitution, laws or treaties of the United States.

9.  This Court also has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District, pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this District, and pursuant to 28 U.S.C. § 1391 (b)(1), because defendant conducts business within this District and resides here.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

CSKI

11. CSKI is a Nevada corporation formed on February 7, 1986, and was formerly known as Comet Technologies, Inc. It is a publicly-traded company whose common stock trades on the NASDAQ under the symbol CSKI. Through its wholly owned subsidiaries, CSKI is involved in the development, manufacture, marketing and sale of over-the-counter, external use Traditional

Chinese Herbal Remedies and Medicines. These products are sold primarily in China. The major ingredients of its products consist of "herbs, roots and plants."

12. CSKI sells a variety of "testing kits" for which, according to CSKI, it has obtained patents including:

    a. The "Cardiac Arrest Early Examination Kit" which is "patented in PRC" for which CSKI supposedly received a design patent registered March 16, 2004, which supposedly allows early diagnosis of myocardial infarction based on the analysis of samples of urine and blood;

    b. The "Urinate Micro Albumin Examination Testing Kit" which is supposedly "patented in PRC" and is supposedly "used in connection with early stage diagnosis for primary kidney disease, hypertension and diabetes";

    c. The "Early Pregnancy Test Kit" which is supposedly "patented in PRC" and is supposedly used to determine pregnancy through a urine sample;

    d. "Endothelin-1" for which CSKI "has obtained an invention patent in China" registered October 4, 2006, and which is supposedly "a new anti-cancer medicine";

    e. The "Sumei Slim Patch" which supposedly fosters weight loss and for which CSKI claims it has received an Arts and Crafts Patent registered in 2001;

    f. The "Human Urinary Albumin Elisa Kit" for which CSKI claims it received an Arts and Crafts Patent registered August 24, 2004; and

    g. The "Suning Cough Removing Patch" for which CSKI claims to have received an Arts and Crafts Patent initially registered December 4, 2001.

13. CSKI claims in the 10-K that it regards "patents and similar intellectual property ("IP") as critical to our business" and that it obtained a "Package box design patent" for all Traditional Chinese Medicine products which was registered on December 4, 2001.

14. CSKI also asserts in the 10-K that it owns the above-described patents, which it reported to be worth $1,933,014 on December 31, 2007, but which were reportedly worth $15,851,765 one year later on December 31, 2008, according to the CSKI Financial Statements.

15. Plaintiff is and has at all times relevant hereto been a "short seller" of shares of common stock of CSKI (hereinafter the "CSKI Stock"), meaning that he has sold shares of CSKI Stock that he borrowed from a broker, expecting subsequently to replace them with other shares of CSKI purchased at a later time and at a lower cost when CSKI Stock becomes more accurately valued.

The Audited Financial Statements and
the Discovery of Material Misstatements Therein

16. On April 15, 2009, approximately eleven months after CSKI engaged Defendant to serve as CSKI's auditor, CSKI filed with the SEC the 10-K, which included the CSKI Financial Statements audited by Defendant.

17. With respect to the CSKI Financial Statements, Defendant provided the following opinion:

> In our opinion, the consolidated CSKI Financial Statements referred to above present fairly, in all material respects, the financial position of China Sky One Medical, Inc. and Subsidiaries as of December 31, 2008, and the results of their operations and their cash flows for the year then ended in conformity with United States generally accepted accounting principles.

18. The foregoing opinion in essence provides an affirmative representation that the CSKI Financial Statements accurately depicted the financial position of CSKI. This opinion provides strong assurance that not only could CSKI's management rely on the accuracy of the

-5-

CSKI Financial Statements and accompanying unqualified auditor's opinion, but so could any other recipient of the CSKI Financial Statements who wished to rely upon them to determine, for example, whether and on what terms to take a position in CSKI shares.

19. In issuing its unqualified opinion regarding the CSKI Financial Statements, MSPC also represented that it had "conducted our audits in accordance with auditing standards generally accepted in the United States," standards that "require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement."

20. After April 15, 2009, Plaintiff began to research CSKI, and in that regard began to investigate the accuracy of the CSKI Financial Statements. From that process he discovered that the CSKI Financial Statements materially misrepresented the financial position of CSKI. Specifically, he became aware that the statements asserted that CSKI owned several patents which it did not actually own. Furthermore, the CSKI Financial Statements failed to state that ACPG, CSKI's holding company according to the 10-K, lost its corporate charter for failure to pay franchise taxes.

21. Plaintiff realized that the dissemination to the public of MSPC's unqualified opinion, and the materially false financial statements which it had audited, had misled stock market investors, resulting in an overinflated stock price. Plaintiff also realized that the $15,093,718 overstatement of CSKI's patent assets was likely to affect other important figures in the CSKI Financial Statements, such as the proper statement of its income and/or profits, thereby necessitating restatement of other components of the CSKI Financial Statements.

22. Based on the foregoing, the CSKI Financial Statements were not prepared by Defendant in accordance with the applicable elements of GAAP as they existed in 2009 when

-6-

Defendant audited CSKI, including but not limited to FAS 142 ("Goodwill and Other Intangible Assets").

23. Moreover, in conducting its audit of CSKI during which it failed to detect the material errors in the financial statements, MSPC had deviated materially from "auditing standards generally accepted in the United States," that is, the standards approved and adopted by the American Institute of Certified Public Accountants ("AICPA"), including but not limited to Generally Accepted Auditing Standards ("GAAS") and Statements on Auditing Standards (codified as AU sections) which are recognized by the AICPA as the Institute's interpretations of GAAS, including but not limited to the standards set forth in AU Section 150 ("Generally Accepted Auditing Standards"), AU Section 230 ("Due Professional Care in the Performance of Work") and AU Section 314 ("Understanding the Entity and Its Environment and Assessing the Risks of Material Misstatement").

24. As a result of widespread reliance by the market on the accuracy of the false and misleading CSKI Financial Statements, and Defendant's unqualified opinion with respect thereto, the value of shares of CSKI stock became inflated, and remains so to this day.

25. After conducting his research as described above, Plaintiff began to establish a short position in CSKI Stock. Between June 16, 2009 and November 30, 2009, Plaintiff established a substantial short position in CSKI Stock. His expectation was that the market would soon realize that CSKI's stock price was overvalued, and thereafter would decline once the corrected information was disseminated into the market.

26. In August 2009, Plaintiff submitted information to MSPC which indicated that the CSKI Financial Statements were materially false and inaccurate and that the unqualified opinion issued by MSPC with respect thereto had to be corrected and/or withdrawn. Upon information

and belief, Defendant took no action in response to this information. Specifically, Defendant failed to withdraw its opinion or make any public announcement relating to the CSKI Financial Statements and the opinion which it issued relating thereto.

27. MSPC's failure to correct its prior disclosures was a principal reason for the CSKI stock price remaining artificially high and overvalued.

28. Plaintiff made further efforts to prompt Defendant to take action. Specifically, he engaged a Chinese patent law firm, Unitalen Attorneys At Law, to conduct an investigation into the truthfulness of the assertions in the audited financial statements regarding patents held by CSKI. After examining the applicable Chinese government records, and completing its investigation, the Unitalen firm issued a report (hereinafter the "Unitalen Report," a copy of which is attached hereto as Exhibit A). In that report, dated February 10, 2010, the Chinese lawyers in effect concluded that CSKI and its subsidiary companies did not own the patents referred to in the CSKI Financial Statements. In effect, the Unitalen Report confirmed Plaintiff's prior research that CSKI's claims to the patents that lie at the heart of its strategy for protection of its intellectual property rights are fictional.

29. Plaintiff informed Defendant of the Unitalen Report and its findings promptly upon receipt, and at that time asked Defendant to revise its unqualified opinion. To date, MSPC has not responded to this request, either privately or publicly, nor has it taken any action to inform the public of its flawed opinion and of the fact that the CSKI Financial Statements are materially false and misleading.

30. Because Plaintiff held a short position in CSKI Stock, and because the price of CSKI stock rose and remained at an elevated price in part as a result of the market's reliance on the purported truthfulness and accuracy of the false information in the 10-K including the CSKI

Financial Statements audited by MSPC, Plaintiff was forced to cover part of his short position by buying-in CSKI shares in a series of transactions, principally between November 27, 2009 and December 28, 2009. These transactions resulting in losses totaling $89,108, based on a first-in, first out basis.

## FIRST COUNT
## (SECURITIES FRAUD)

31. Plaintiff repeats and re-alleges each allegation set forth in paragraphs 1-29 of this Complaint as if fully set forth herein.

32. Whether or not Defendant knew that the CSKI Financial Statements were materially false and that its unqualified opinion was false when they were first issued in April 2009, between August 2009 and February 2010, when MSPC learned that the CSKI Financial Statements that it had audited were materially false and that its unqualified opinion regarding those statements was materially false, MSPC failed to correct its unqualified opinion on the CSKI Financial Statements despite the fact that there was an active market for CSKI stock. MSPC allowed those statements and that opinion to continue to be used and relied upon. Despite a duty to take action, MSPC failed to take any action to correct, qualify or withdraw its opinion, or to direct CSKI to report that the CSKI Financial Statements were materially false and misleading. MSPC stood by and did nothing, thereby concealing the truth of CSKI's financial condition which a reasonable investor -- long or short -- would surely want and need to know, and on which MSPC knew the market would be relying.

33. Defendant's actions and/or inaction were intentional and/or reckless, evidenced by the fact that they were specifically informed of the serious problems with the CSKI Financial Statements and yet did nothing. Despite this knowledge, Defendant failed to take any necessary and/or appropriate steps, and thereby deliberately and consciously allowed the public to continue

to be misled about CSKI's true financial condition. Defendant apparently was motivated either by the fact that the magnitude and seriousness of their error(s) would likely jeopardize its relationship with a well-paying client, or might jeopardize its professional reputation, or for some other reason not yet known by Plaintiff.

34. As a direct result of the artificially high value of CSKI Stock resulting from MSPC's failure to correct, Plaintiff has been forced to liquidate some of his short position at a loss to satisfy the terms of his agreement with his broker through whom he established a short position in CSKI Stock, resulting in a loss in the amount of not less than $88,000.

35. MSPC's conduct thus constitutes a direct violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, in that Plaintiff has suffered damages as a direct and proximate result of MSPC's misrepresentations and/or omissions.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## CONCLUSION

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant as follows:

A. For compensatory damages in an amount to be established at trial, and for appropriate interest thereon;

B. For punitive damages;

C. For costs and disbursements of this action, including reasonable attorneys' fees; and

D. For such other and further relief as this Court deems just and proper.

Dated:    New York, New York                    HUTNER KLARISH LLP
          March 2, 2010                          Attorneys for Plaintiff

                                                 By: _____
                                                     Eric S. Hutner (EH-6836)

Of Counsel:

R. Brent Blackstock, Esq.
Hartman, Blackstock & Moore
6520 S. Lewis Avenue
Suite 15 P.O. Box 700690
Tulsa, Oklahoma 74136

# EXHIBIT A

Attorney-Client Privilege/Attorney Work Product

# Unitalen Attorneys At Law

Scitech Place, 22 Jianguomenwai Ave.
Beijing, China 100004
011-86-10-59208888

To:     John Bird

From:   UNITALEN ATTORNEYS AT LAW

Re:     IP Investigation on CSKI

Date:   February 10, 2010

---

According to your instruction, we conducted an investigation on related patents of CSKI and now prepare our report for your opinions.

In most cases we relied on the patent information in the English and Chinese language versions published by the SIPO (the State Intellectual Property Office of China) at its website (www.sipo.gov.cn) to conduct the patent search for the target companies.

In China there are three categories of patents: invention patent, utility model and design. According to the Chinese Patent Law and related practice, all the invention patent applications would published exactly after 18 months since the filing date (or priority date if any), unless the invention application has been withdrawn before or the applicant requests an early publication. Turning to the utility model and design, all the applications will be published once they are granted for a right, and normally the duration for a utility model and design from the filing to the grant needs six to ninth months. The publication as above includes in a written form (like patent gazette) as well as on line (by www.sipo.gov.cn). Therefore, the publication information on the website (www.sipo.gov.cn) regarding the published invention patent, utility model and design in China is extremely competent and accurate to reflect the corresponding Chinese patent records.

On the other hand, our patent search conducted on our best judgment and our due diligence covers all the published invention patent, utility model and design, excluding those non-published invention patent applications (which we expect at our best knowledge were filed all within 18 months from now on, i.e. after August 2008, if there is no priority) as well as those non-published utility model and design applications (which were filed normally after May 2009).

## 1.  Company Overview and organization structure

China Sky One Medical, Inc. (CSKI) was established in 1994 with the headquarter located in Los Angeles of USA. Listed on NASDAQ in 2008, the company conducts its business through its wholly-owned Chinese subsidiaries, Harbin TianDiRen Medical Science and Technology Co., Ltd, HeiLongjiang

1

Attorney-Client Privilege/Attorney Work Product

Tianlong Pharmaceutical Co., Ltd, HeiLongjiang Haina Medical Science and Technology Co., Ltd, Harbin First Bio-engineering Co., Ltd, PengLai Jinchuang Pharmaceutical Co., Ltd and Harbin Tianqing Biotechnology Application Co., Ltd.



Resource: http://www.tcm-export.com/zzjg.asp

## 2. Patent Search as well as the results

2.1. We conducted a patent search on the SIPO website for any published patents owned to CSKI (China Sky One Medical, Inc.) in Chinese and in English, and found that CSKI has no patent published in China.

When conducting the patent search with the name of the applicant being only "Sky One" in Chinese or English, nothing could be found.

To our best knowledge of more than twelve years as a patent attorney in China, any invention patent application filed before August 2008, and any allowed utility model and design, should be published and accessible via this SIPO website. However, this finding as above is absolutely contrary to the statement that CSKI has 7 patents (three designs and four invention patents) as of May 2006, as well as the Endothelin-1 invention patent as of 2006.

2.2. We also conducted a patent search on the SIPO website for any published patents owned to Harbin Tian Di Ren Medical Science and Technology Company ("TDR") in Chinese and in English, and found TDR has only one published patent application whose filing number is 200410056969.7. This patent application was

Attorney-Client Privilege/Attorney Work Product

rejected on Aug. 6, 2008 and there is no other publication for the development, and we expect this application is abandoned or is still pending.

Please see the below for the detailed information:

| Title: | Reagent kit for external detecting early kidney disease and its use | | |
|---|---|---|---|
| Application Number: | 200410056969.7 | Application Date: | 2004.08.24 |
| Publication Number: | 1588074 | Publication Date: | 2005.03.02 |
| IPC: | G01N33/547;G01N33/52;G01N33/577 | | |
| Applicant: | Tiandiren Medicine Science and Technology Development Co.; Ltd., Harbin City | | |
| Inventor: | Yanqing Liu | | |
| Priority Information: | | | |
| Abstract: | The patent refers to the field of 'investigating or analysing materials by determining their chemical or physical properties'.The invention discloses a new reagent box for detecting forepart nephrophthy. The reagent is mainly made up of following ingredients: enzyme labeling single clone antibody resisting ALB antigen, enzyme labeling board enclosed with ALB antigen, enzyme bottom liquid, standard product, sample diluter, detergent, stopping liquid and specification of the reagent box. The stability of the box is high, quick, low cost, and the sensitivity is high. | | |

Legal Status:

| Legal Status Publication Date: | 2005.03.02 |
|---|---|
| Legal Status: | publication |
| Legal Status Publication Date: | 2005.05.04 |
| Legal Status: | initiative for examination as to substance |
| Legal Status Publication Date: | 2008.08.06 |
| Legal Status: | rejection of an application for a patent for invention after its publication |

2.3. We conducted a patent search on the SIPO website for any published patents owned to Harbin TianDiRen Medical Science and Technology Co., Ltd in Chinese and in English, and found that Harbin TianDiRen Medical Science and Technology Co., Ltd. has no patent published in China.

Attorney-Client Privilege/Attorney Work Product

When conducting the patent search with the name of the applicant being only "TianDiRen", only 200410056969.7 owned to Tiandiren Medicine Science and Technology Development Co.; Ltd. could be found.

Information source: http://search.sipo.gov.cn/sipo/zljs/FlztResult.jsp

2.4. We conducted a patent search on the SIPO website for any published patents owned to HeiLongjiang Tianlong Pharmaceutical Co., Ltd. in Chinese and in English, and found that HeiLongjiang Tianlong Pharmaceutical Co., Ltd has one patent which is a valid design patent and has a patent number of CN200830115627.7.

Please see the below for the detailed information:

| Title: | The gift box (emulsifiable paste of compound camphor) | | |
|---|---|---|---|
| Application Number: | 200830115627.7 | Application Date: | 2008.04.02 |
| Publication Number: | CN300907772 | Publication Date: | 2009.04.15 |
| IPC: | 09-03 | | |
| Applicant: | Heilongjiang Tianlong Pharmaceutical Co., Ltd. | | |
| Inventor: | Xu Jie | | |
| Priority Information: | | | |
| Abstract: | 1.Require the appearance design that is protected to include color; 2.Require in the appearance design that is protected, the back view is the same as front view, so omit the back view. | | |

| Legal Status: | |
|---|---|
| Legal Status Publication Date: | 2009.04.15 |
| Legal Status: | granted |

2.5. We conducted a patent search on the SIPO website for any published patents owned to PengLai Jinchuang Pharmaceutical Co., Ltd or HeiLongjiang Haina Medical Science and Technology Co., Ltd. in Chinese and in English, and found that these two companies have no patent published in China.

2.6. We conducted a patent search on the SIPO website for any published patents owned to Harbin First Bio-engineering Co., Ltd, or Harbin Tianqing

4

Attorney-Client Privilege/Attorney Work Product

Biotechnology Application Co., Ltd. in Chinese and in English, and found that these two companies have no patent published in China.

2.7. It is noted from the extract of the business registration of Harbin Tian Di Ren Medical Science and Technology Company, American California Pharmaceutical Group is its investor.

We further conducted a patent search on the SIPO website, as well as on http://ep.espacenet.com/ (theoritically publishing all published patents worldwide) for any published patents owned by American California Pharmaceutical Group in Chinese and in English, and found that this company has no patent published in China and other country.

When conducting the patent search with the name of the applicant being only "California Pharmaceutical", nothing could be found.

### 3. Other search for the patent assignment and license

In order to avoid missing some patent transferred to the target company but not published, we obtained the statistics about all the Assignments and Recordal of Patent License Contract ranging from 2002 until 2009 from the SIPO.

We haven't found any patent assignment involving Harbin Tian Di Ren Medical Science and Technology Company; HeiLongjiang Tianlong Pharmaceutical Co., Ltd; PengLai Jinchuang Pharmaceutical Co., Ltd or HeiLongjiang Haina Medical Science and Technology Co., Ltd., no matter as an assignee or assignor.

This means that since 2002 to the end of 2009, these companies, including Harbin Tian Di Ren Medical Science and Technology Company; HeiLongjiang Tianlong Pharmaceutical Co., Ltd; PengLai Jinchuang Pharmaceutical Co., Ltd or HeiLongjiang Haina Medical Science and Technology Co., Ltd., have never obtained any patent or patent application by way of assignment from other entity or person.

In addition our search for these statistics also indicated that since 2002 to the end of 2009, these companies, including Harbin Tian Di Ren Medical Science and Technology Company; HeiLongjiang Tianlong Pharmaceutical Co., Ltd; PengLai Jinchuang Pharmaceutical Co., Ltd or HeiLongjiang Haina Medical Science and Technology Co., Ltd., have never been involved in a recorded patent license, either as a licenser or as a licensee.

### 4. Further search for possible published patents involved by or owned to some critical manager of CSKI

We have obtained the extracts of the Chinese business registrations of Harbin TianDiRen Medical Science and Technology Co., Ltd, HeiLongjiang Tianlong Pharmaceutical Co., Ltd, HeiLongjiang Haina Medical Science and Technology Co., Ltd, and PengLai Jinchuang Pharmaceutical Co., Ltd. and knew the exact Chinese name of their legal representative. These extracts indicate that:

Attorney-Client Privilege/Attorney Work Product

the investor of Harbin TianDiRen Medical Science and Technology Co. is American California Pharmaceutical Group, Inc; and the legal representative of Harbin TianDiRen Medical Science and Technology Co. is Yanqing Liu;

the investor of HeiLongjiang Tianlong Pharmaceutical Co., Ltd is Harbin TianDiRen Medical Science and Technology Co.; and the legal representative of HeiLongjiang Tianlong Pharmaceutical Co., Ltd is Yuechang Tian;

the investor of HeiLongjiang Haina Medical Science and Technology Co., Ltd is Harbin TianDiRen Medical Science and Technology Co.; and the legal representative of HeiLongjiang Haina Medical Science and Technology Co., Ltd is Yukun Zhang;

the investor of PengLai Jinchuang Pharmaceutical Co., Ltd is Harbin TianDiRen Medical Science and Technology Co. ; and the legal representative of PengLai Jinchuang Pharmaceutical Co., Ltd is Xiaoyan Han.

Based on the above finding, we further conducted search for possible published patents involved by or owned to some critical manager of CSKI, with the above legal representatives as the applicant and inventor, and our findings are listed below:

| Name | Number of published patents filed as an applicant | Number of published patents filed as an inventor |
|---|---|---|
| Yanqing Liu | 0 | 7 inventions and 2 utility models |
| Yuechang Tian | 0 | 0 |
| Yukun Zhang | 27 | 2 |
| Xiaoyan Han | 2 | 5 |

With respect to Yanqing Liu, no published patents are owned to Yanqing Liu, and there are 7 invention patents/applications and 2 utility models with Yanqing Liu as the inventor. These two utility models concerning telecommunication and glass forming machinery are owned to a telecommunication company in Heibei province and a factory in Shandong. .

Among the 7 invention patents/applications, one definitely is that application No. 200410056969.7, and one concerning telecommunication is owned to a telecommunication company in Heibei province. What is more, there are four patents/applications (two patents, two applications) relating to salmonella carrier bacterin and coliform bacteria bacterin are owned to Third Military Medical University of Chinese People's Liberation Army located in Chongqin far away from Heilongjiang province, and one patent concerning a compound for insecticide is owned to Nanjing University, and in these five patent Yanqing Liu is one of lot of co-inventors. In view of the fact that the six patents/applications excluding 200410056969.7, the applicants/patentees have nothing to do with CSKI, and therefore, we are certain that those Yanqing Lius are not that Yanqing Liu in CSKI

Attorney-Client Privilege/Attorney Work Product

although Yanqing Liu are in the same Chinese characters, and these six patents/applications excluding 200410056969.7 are not related to CSKI.

In addition there are no published patents/applications with Yuechang Tian as the patentee or inventor. Turning to Yukun Zhang and Xiaoyan Han, those patents/applications as found have nothing to do with medicine, their owners are not located in Heilongjiang province (for Yukun Zhang) or in Shandong province (for Xiaoyan Han) and nor has nothing to do with Haina, PengLai, TDR or CSKI. Therefore, these patents/applications as found are not related to CSKI.

## 5. Conclusion

On the above findings, we conclude that we find only one patent application No. 200410056969.7 owned to Harbin Tian Di Ren Medical Science and Technology Company ("TDR"), and one design ZL200830115627.7 owned to HeiLongjiang Tianlong Pharmaceutical Co., Ltd..

In addition to the above, we did not find any other published Chinese patents or applications owned to China Sky One Medical, Inc. (CSKI), Harbin TianDiRen Medical Science and Technology Co., Ltd, HeiLongjiang Tianlong Pharmaceutical Co., Ltd, HeiLongjiang Haina Medical Science and Technology Co., Ltd, Harbin First Bio-engineering Co., Ltd, PengLai Jinchuang Pharmaceutical Co., Ltd, Harbin Tianqing Biotechnology Application Co., Ltd. and even American California Pharmaceutical Group. We did not find any published Chinese patents or applications related to the above companies.

UNITALEN ATTERNOYS AT LAW

Hao ZHANG
Patent Attorney, Attorney at Law
February 10, 2010

7